[Civ. No. 5060.  Third Appellate District.—April 3, 1934.]

HOWARD E. KENTFIELD et al., Appellants, v. THE RECLAMATION BOARD OF THE STATE OF CALIFORNIA, Respondent.

Reginald S. Laughlin and Earl F. Treadwell for Appellants.

U. S. Webb, Attorney-General, Emmett J. Peterson, Deputy Attorney-General, and Stephen W. Downey, for Respondent.

PLUMMER, J.—On the tenth day of March, 1932, the appellants filed a petition in the Superior Court of the County of Sacramento, praying for a writ of mandate directing the Reclamation Board of the State of California to fix the amount of installments that should be called upon assessment No. 6, based upon an assessment levied upon the lands lying within the boundaries of the Sacramento and San Joaquin drainage district. Also, to fix the time at which such installments should be paid. The petition also prayed that the call for the payment of installments upon said assessment should be made in accordance with the act of the legislature, of date May 26, 1927. (Stats. 1927, p. 1503.) The writ being denied, the cause has been brought to this court for hearing and determination.

By an act of the legislature approved May 26, 1913 (Stats. 1913, p. 252), the premises involved in this action were included within a reclamation district created and organized under the provisions of said act. Section 14 of the act, after providing that the assessment be certified and deposited in the office of the county treasurer of the different counties, contains the following: ''All unpaid assessments shall bear interest at the rate of 7 per cent per annum, and shall be paid to the county treasurer in separate installments, in such amounts, and at such times, respectively, as the Board, from time to time, in its discretion, may, by an order in its minutes, direct; if any such installment shall remain unpaid at the expiration of thirty days from the date of the order, then said installment shall become delinquent, together with the accrued interest thereon, etc. . . . Immediately after the said installment has become delinquent, the Board may publish a notice at least once a week for three weeks in some newspaper of general circulation.'' The section requires this notice to describe the property, state that it will be sold on a certain date, and the place of sale. The section then further provides that on the date of sale the property on which the installment is delinquent must be sold to the highest bidder for cash.

Section 15 of the act provides that all money collected upon assessments shall be paid out upon warrants. Also, that if sufficient funds are not in the hands of the treasurer, the state treasurer shall indorse upon such warrants the

date of presentation, and thereafter the warrant shall bear interest at the rate of seven per cent per annum, and paid in the order of their registration. The section further specifies that such warrants shall be considered as contracts in writing for the payment of money by the district, and that an action upon a warrant might be commenced within four years from the date thereof.

It is further provided that the warrants might be received in payment of any assessment. The reclamation board was given power to extend the period of payment of any warrant for an additional four years upon application of the holder thereof. The board is also authorized by this section, whenever there is sufficient money on hand to redeem any of the warrants, to publish notice of such fact.

The reclamation board created by the act of May 26, 1913, proceeded with the reclamation of the district, as contemplated by the act, adopted a plan of reclamation and flood control generally known as "Sutter-Butte By-Pass Project No. 6", and on or about September 7, 1920, levied an assessment in the sum of $8,155,798.70. Considerable litigation followed until in September, 1923, the assessment just mentioned was finally confirmed by the Supreme Court. Subsequent to the proceedings just mentioned, the reclamation board determined that it would be to the best interests of the district to issue bonds in accordance with the provisions of the Bond Act of 1919. The bonds issued in accordance with such proceedings were deposited with the state treasurer in January, 1923, and thereafter offered for sale. However, no legal bids were ever received for such bonds, and thereafter, in pursuance of an authorization of the legislature, the bonds were canceled.

In 1927 (Stats. 1927, p. 1503), the legislature authorized the reclamation board to call for installment payments on assessment No. 6 of not less than three and one-half per cent of the principal thereof. Under this act the reclamation board issued four calls, to wit: An installment was called on June 1, 1928; one on November 1, 1928; one on June 1, 1929; one on November 1, 1929. An act of the legislature approved May 21, 1929 (Stats. 1929, p. 707), authorized the discontinuance of installment calls by the reclamation board, since which date no installment calls have been made.

On the date of the filing of the petition herein there was delinquent on the calls referred to the sum of $109,721.62. No lands within the district have been sold on account of nonpayment of any installments.

The record shows that in the prosecution of the reclamation of the lands lying within the drainage district created by the act of 1913, the reclamation board of the state incurred an indebtedness of $17,215,126.17, upon which, at the date of the hearing of this cause, there still remained unpaid on account of project No. 6 the sum of $593,274.20. The manner in which the indebtedness of the district has been reduced from its original cost to the sum just mentioned constitutes an epic in finance unequaled in the history of reclamation districts. The expenses of reclamation were more than twice the amount of the assessment. To double the assessment by supplemental proceedings would have imposed a burden upon the lands included within the district beyond their power to sustain. The record shows that not only were the lands and premises reclaimed and rendered immune from floods, but other property interests in the state of California were protected, and navigation of the Sacramento River and its tributaries greatly benefited.

Both the federal and state governments made appropriations for the retirement of warrants issued on account of the cost of the project, and between May, 1930, and September 30, 1932, warrants were retired by the use of funds so provided, and in the payment of assessments to the extent of $16,468,679.72, since which date the total outstanding warrants have been reduced to the figures hereinbefore stated, the owners of the land within the district paying either in cash or in warrants the sum of approximately four millions of dollars.

Upon provision being made by the general and state governments for the redemption of warrants, the reclamation board discontinued the further calling of installments. As shown by what we have just stated, the financing of the district and the discharge of the indebtedness incurred in the reclamation works covered a period of years and was not completed to the extent which we have stated until some months after the filing of the petition for a writ of mandate herein.

■ As stated in 38 C. J., p. 602: "The duty to be enforced by *mandamus* must be a duty which exists at the time when the application for the writ is made." (See, also, cases cited in note 91.)

The warrants issued in the prosecution of the reclamation works involved in project No. 6 bore no due date.. The record shows that it was not contemplated that the warrants should be paid in cash at any particular date, but should be redeemed only when there were sufficient funds in the hands of the state treasurer, available for such purpose. It likewise appears that the intention to redeem the warrants should be made by the issuance and sale of bonds. There being no market for the bonds, the time consumed and the proceedings taken in the issuance, validation of the bonds and offering for sale availed neither the land owners nor the warrant holders anything. It then becoming apparent that aid outside of the district must be had, or the costs of reclamation could never be paid, efforts were put forth to induce the general and state governments to come to the rescue. These proceedings necessarily covered several years. Investigations had to be made, reports of the investigations returned and considered, and appropriation bills carried through the legislative branches of the federal and also through the legislative branches of the state government, requiring much additional time. In view of the immense sum of money involved in the transaction, the time consumed, however, cannot, as a matter of law, be declared excessive or imposing any additional duties or obligations upon the members of the reclamation board of the state.

Until after the cancellation of the bonds sought to be issued under the Bond Act of 1919, and which bonds were canceled in 1927, the reclamation board had no right to make any calls. Subsequent to that date, however, the board did issue calls for the payment of four installments. These installments were partly paid in warrants and partly paid in cash, save and except that at the time of the institution of this proceeding there still remained unpaid and delinquent the sum of $109,721.62. Whatever duty the legislative acts referred to devolved upon the reclamation board of the state, relative to advertising the lands within the district upon which installments have become delinquent, whether such duties are mandatory, permissive or discretionary, does

not appear to be involved in this action. It may be questioned, nevertheless, that such proceedings should be had, and the lands advertised for sale, sold, and the proceeds derived therefrom applied toward the payment of outstanding warrants before any additional installment calls are made.

The law is well settled that warrants, bonds and contracts of reclamation districts have written into them the law existing at the date of the issuance of such warrants, bonds or contracts. This court had occasion to consider this question, and went into the subject quite extensively in the case of *Hershey* v. *Cole,* 130 Cal. App. 623 [20 Pac. (2d) 972], and need only call attention to the cases there cited.

It necessarily follows that the repeal of the act of 1927 directing the issuance of installment calls in the sum of three and one-half per cent did not in anywise affect the rights of warrant holders. When the legislature directed the reclamation board to make calls in the amounts stated, it gave an additional remedy to the warrant holders, which constituted no part of their contract, and not being a part of the contract, the direction to the reclamation board of the state might be withdrawn at any time. The repeal by the legislature of the act directing the percentage in which installment calls should be made did not, however, affect the obligation of the district to pay the outstanding warrants, nor did it lessen the duty of the reclamation board to make calls for their payment.

As herein stated, the right of the petitioner to a writ of mandate depends upon the conditions existing on the tenth day of March, 1932. Section 14 of the act approved May 26, 1913, *supra,* directs the reclamation board of the state to call for installment payments upon assessments, at such time and in such amounts, in its discretion, and may order the same to be entered upon the minutes of the board. The question revolves around the interpretation of the word "discretion". The word "discretion", however, is not unlimited in its meaning. It must be exercised in view of all the conditions existing at the time the demand is made for its exercise. It does not mean, and we do not need to cite authorities to support this statement, that the reclamation board may indefinitely postpone the calling of installments for the payment of outstanding warrants, or that warrants

are to be paid only upon the uncontrolled discretion or caprice of the reclamation board. It means, and it must mean, that the discretion as to the time when the installment may be made, and the amount of the calls to be made, shall be seasonably exercised in order that creditors may receive payment on the obligations of the district owned by them.

In 16 California Jurisprudence, page 809, the text reads: "It is a familiar rule governing the issuance of the writ of mandate that an officer in whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. *Mandamus* may not compel the exercise of such discretion in any particular manner. It may only direct that the officer act, and must leave the matter as to what action he will take, to his determination. Where official discretion has been exercised, the statute not having set any definite limits thereto, the courts can neither require the officer to act again, nor set a limit within which he must act. And if the discretion exercised by an inferior tribunal, officer or board, is intended to be final, or if there is any other plain, speedy and adequate remedy, *mandamus* does not lie. An abuse of discretion, however, is not the exercise of discretion, but is action beyond the limits of discretion; and it is settled that the writ will issue to correct such abuse if the facts otherwise justify its issuance."

Likewise, as to the discretion to be exercised by the court the text in 16 California Jurisprudence, page 768, reads: "The issuance of the writ is not altogether a matter of right, but involves consideration of its effect in promoting justice. The granting or refusing of the writ lies, therefore, to a considerable extent, within the sound judicial discretion of the court where the application is made. Cases may therefore arise where the applicant for relief has an undoubted legal right, for which *mandamus* is the appropriate remedy, but where the court may, in the exercise of a wise discretion, still refuse the relief. By this, however, it is not meant that the court may arbitrarily grant or refuse the writ; the discretion is to be exercised in accordance with established rules, in order to prevent a failure of justice. Where one has a substantial right which cannot

otherwise be enforced, he is entitled to the writ as a matter of right, and it is an abuse of discretion to refuse it.''

Again, as stated in 18 Ruling Case Law, page 119: ''In order to enforce by *mandamus* a ministerial duty, the obligation must be both peremptory and plainly defined; the law must not only authorize the act but it must require the act to be done. So where the statute imposing upon the officer the duty sought to be coerced is couched in permissive terms, this has been held to confer upon him a discretionary power as to the performance of the act and not to impose upon him a clear legal duty to act, and that therefore *mandamus* will not issue to control his discretion. . . . Frequently, however, the word 'may' or the like as used in statutes relating to the duty of public officers is construed as mandatory, and not merely permissive, and of course when such is the case *mandamus* may issue to compel the officer to perform the duty so imposed.''

In *Fawkes* v. *Burbank City,* 188 Cal. 399 [205 Pac. 675], the court in considering this question quotes with approval the following language from ''High on Extraordinary Legal Remedies'', section 9: ''The exercise of the jurisdiction rests to a considerable extent in the sound discretion of the court, and that cases may therefore arise where the applicant for relief has an undoubted legal right for which *mandamus* is the appropriate remedy, but where the court may, in the exercise of a wise discretion, still refuse the relief.''

In *American Securities Co.* v. *Forward,* *(Cal.) [24 Pac. (2d) 810], the court, in considering the right of a petitioner to a writ of mandate, quotes from other cases as follows: ''When it is applied for there must be a clear case to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. (*Perrin* v. *Honeycutt,* 144 Cal. 87 [77 Pac. 776]; sec. 1085, Code Civ. Proc.) In order to invoke it there must be a specific legal right. The party sought to be coerced must be bound to act. If the existence of the right

---

*REPORTER'S NOTE: A rehearing in the case of *American Securities Co.* v. *Forward* was granted by the Supreme Court on September 22, 1933. The final opinion of the Supreme Court in said cause was handed down on April 23, 1934, and is reported in 220 Cal. 566 [321 Pac. (2d) 343].

is doubtful the writ will be denied. (16 Cal. Jur., p. 768, and cases there cited.) Furthermore, even when the technical rules of law authorize it, the issuance of the writ is, in large measure, discretionary with the court. (*Fawkes* v. *City of Burbank*, 188 Cal. 399 [205 Pac. 675].) In the case just cited it is said (quoting with special approval from *Wiedwald* v. *Dodson*, 95 Cal. 453 [30 Pac. 580]) : 'We think the correct doctrine 'is expressed in High on Extraordinary Legal Remedies, section 9, where, speaking of *mandamus*, it is said: ''The exercise of the jurisdiction rests, to a considerable extent, in the sound discretion of the court''; and that ''cases may therefore arise where the applicant for relief has an undoubted legal right, for which *mandamus* is the appropriate remedy, but where the court may, in the exercise of a wise discretion, still refuse the relief.'' ' '' A rehearing was granted in this case, and we do not cite the same as supporting any other of the conclusions arrived at concerning the issues presented to us for determination.

Again, while a portion of section 14 of the Sacramento and San Joaquin Reclamation Act appears to be permissive in giving to the reclamation board of the state discretion as to the amount of an installment that may be called, and also the time of fixing the payment, that portion of the section which relates to the advertising and selling of lands upon which installment payments have become delinquent is mandatory in form. That portion of the section requires that immediately upon an installment becoming delinquent, the board must proceed in the manner therein stated to secure, if possible, payment of the installment by advertising and selling the land. Under such circumstances we think, as to that portion of the section, the following cases decided by this court are decisive: *County of Los Angeles* v. *State of California*, 64 Cal. App. 290 [222 Pac. 153] ; *Stockton Plumbing & Supply Co.* v. *Wheeler*, 68 Cal. App. 592 [229 Pac. 1020], where the word ''may'' is held to be mandatory in imposing a duty upon a public officer where the rights of third parties are involved.

In the case of *Kinlein* v. *Mayor etc. of the City of Baltimore*, 118 Md. 576 [85 Atl. 679], we find a statement as to when the writ of mandate may be issued or denied, as follows: ''The remedy by *mandamus* is not one which is accorded as of legal right. The granting or withholding of the writ rests largely within the discretion of the court;

but this discretion is not a purely arbitrary one, and cannot be capriciously exercised, but it will not be granted where it is altogether unnecessary, or would work injustice, or would be unavailing or nugatory, or would introduce into municipal administration great confusion or disorder.'' (Citing *Brooke* v. *Widdicombe,* 39 Md. 386; 19 Am. & Eng. Ency. of Law, 751, and other cases.) To the same effect is the case of *Crow* v. *Board of Supervisors of the County of Stanislaus,* 135 Cal. App. 451 [27 Pac. (2d) 655].

■ Other cases may be decided to the effect that where the issuance of the writ is unavailing, the court will decline to issue such a writ, even though a clear legal right does exist. (See *Lukens* v. *Nye,* 156 Cal. 498 [105 Pac. 593, 20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244].)

■ We find no basis in the record upon which the court could direct the reclamation board of the state of California to call an installment of any particular amount if the circumstances were such as to show beyond controversy that at the date of the filing of the petition herein the right to such writ existed. All that the court could do would be to issue its writ directing the board to proceed and make a call for the payment of an installment in such reasonable amount, and at such reasonable time as the board might determine, with the additional direction that such proceedings should be instituted on or before a date fixed in the order of the court.

While the provisions of the various bond acts pertaining to reclamation districts have been called to our attention, and arguments based thereon as indicating the duty of the reclamation board to call installments according to the percentages fixed in calling for installment payments to discharge interest and accruing principal on bonds, we do not see their applicability, as the rights of the parties in this case we think rest solely upon the provisions of the act of May 26, 1913, *supra*. Nor do we deem it necessary to list herein the cases construing the meaning of the word ''discretion'', as it appears to be conceded that whenever a discretion is reposed in a body as to when it shall act, that act shall be seasonably taken, and if the discretion is unduly prolonged, the court will compel action to be taken.

■ The only remaining issue tendered to us is whether, upon the date of the filing of the petition herein it appeared

to the trial court that the discretion of the reclamation board of the state had been abused. Questions as to whether it would or would not now be a hardship upon the property owners for the court to issue its mandate, and whether those matters can be considered, would only be *dicta,* and therefore we express no opinion thereon.

As we have set forth herein, the financing project carried on by the reclamation board was not completed to the extent stated until about the 1st of October, 1932. Over $100,000 in delinquencies had not yet been collected. In view of these circumstances we think the trial court was justified in holding that the discretion of the board as to the time of resuming the calling of additional assessments had not been abused, irrespective of the other reasons urged by counsel involving the inability of the landholders to pay assessments, the number of additional assessments already imposed upon lands within the district by underlying reclamation and irrigation districts, and delinquencies in county and state taxes.

As the record confines our consideration to the transactions preceding, and conditions existing on the tenth day of March, 1932, no opinion is expressed as to whether there has been any abuse of discretion by the respondent in failing to call installment payments since the completion of the financing of the district, as herein referred to, if such be the case, and nothing contained herein is intended to limit the right of the petitioners to institute further mandatory proceedings.

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 31, 1934.