[Civ. No. 28973. Fourth Dist., Div. One. Aug. 16, 1984.]

JOHN ELMORE, Plaintiff and Appellant, v.
IMPERIAL IRRIGATION DISTRICT, Defendant and Respondent.

COUNSEL

Gray, Cary, Ames & Frye, William N. Kammer and David L. Osias for Plaintiff and Appellant.

Jennings, Engstrand & Henrikson, Wallace R. Peck, Horton, Knox, Carter & Foote and R. L. Knox, Jr., for Defendant and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—Plaintiff John Elmore appeals an order of the trial court sustaining without leave to amend a demurrer to his petition for writ of mandamus. Respondent Imperial Irrigation District (IID) con-

tends (1) the order is nonappealable; (2) the jurisdiction of the State Water Resources Control Board (Board) had already been invoked by Elmore at the time he filed the petition for writ of mandamus and therefore the Board has exclusive jurisdiction over this matter; and (3) the petition for writ of mandamus fails to state a cause of action.

## FACTS

On this appeal of a hearing on demurrer, we assume the facts alleged in Elmore's amended petition are true and Elmore can prove them. (*Isakoolian* v. *Issacoulian* (1966) 246 Cal.App.2d 225, 227 [54 Cal.Rptr. 543].) These are the facts: Elmore is a farmer whose land is located in Imperial County adjacent to the Salton Sea. Elmore charges IID, a public irrigation district, has been wasteful and unreasonable in its water management practices. As a result IID has caused substantial volumes of fresh water to needlessly flow into the Salton Sea. The sea's surface level has risen over three feet since 1974.

Thousands of acres of land owned by Imperial County farmers previously suitable for farming, mineral and steam production have been flooded with salt water. The rising sea has flooded portions of Elmore's land and threatens the remainder of Elmore's land. Elmore has been forced to build earth dikes more than three miles long between his land and the sea to keep back the water, thereby removing valuable acreage from agricultural production. As a result of the flooding much of Elmore's land is lower than the surface elevation of the sea. The increase in surface level of the sea has effectively destroyed the gravity drainage capacity of Elmore's land, forcing Elmore to install pumps to remove irrigation waters from his land into the sea. Elmore has demanded IID stop its filling of the Salton Sea, but IID continues to cause fresh water to flow into the sea.

In June 1980, Elmore requested the California Department of Water Resources (DWR) investigate IID's waste and misuse of water. Elmore also requested a hearing from the Board. The DWR investigated for 18 months and issued its report in December 1981, concluding IID wastes and misuses substantial quantities of water. To avoid running of applicable statutes of limitation, Elmore brought a lawsuit in the Superior Court of Imperial County for damages and injunctive relief at the same time as his application to the DWR.

On March 15, 1982, Elmore filed this petition for writ of mandamus in the superior court, alleging IID violated its statutory duty by wasting and misusing water and by flooding Elmore's land and destroying existing drainage on Elmore's land. IID's demurrer to this petition was sustained without

leave to amend. The court ruled the petition was "overly broad, thereby uncertain as to specific acts or restraint of acts required to be enforced by the Court." Elmore filed a first amended petition. A demurrer to the amended petition was sustained without leave to amend. This appeal followed.

DISCUSSION

I

At the threshold of these proceedings is the question of the applicability of the "single judgment" rule. Was the order of the court sustaining the demurrer without leave to amend an appealable order? IID argues an action between these parties languishes in the files of the Imperial County Superior Court awaiting trial for damages and injunctive relief and all of the issues raised by the petition are still before the trial court as part of the allegations raised in Elmore's complaint. IID therefore contends no final judgment has been rendered so no appeal may be taken. In support of this contention, IID cites *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357], holding there cannot be an appeal from a separate judgment as to one count in a complaint which contains several extant counts. Rather, the Supreme Court ruled, there can be but one judgment in an action no matter how many counts the complaint contains.[1]

It is true for an appeal to lie there must be a final judgment terminating the proceedings below and finally determining the rights of the parties. (*Gibson* v. *Savings & Loan Commissioner* (1970) 6 Cal.App.3d 269, 271 [85 Cal.Rptr. 799].) Appealability is a jurisdictional issue which may be raised by the appellate court even if not mentioned by the parties. (*Collins* v. *Corse* (1936) 8 Cal.2d 123, 124 [64 P.2d 137].) The fact the trial court labels its ruling "a judgment" is irrelevant in determining whether the decision is appealable. (*Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 928-929 [89 Cal.Rptr. 390].)

However, a petition for writ of mandamus is a special proceeding. (Code Civ. Proc., § 1084 et seq.) By definition, a "judgment in a special proceeding is the final determination of the rights of the parties therein." (Code Civ. Proc., § 1064.) A trial court order denying a writ of mandamus

---

[1]Elmore asserts the initial petition for writ of mandamus was inadvertently filed with the same case number as the pending complaint for damages and injunctive relief. He suggests this inadvertent filing did not transform the writ petition into a motion or defacto amendment of the complaint as the IID would suggest. If Elmore had intended to add another cause of action to his complaint, he would have moved the trial court for permission to amend. Elmore says he brought this special proceeding because there was no "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) (See *Reinbold* v. *City of Santa Monica* (1976) 63 Cal.App.3d 433, 438 [133 Cal.Rptr. 874].)

is appealable. (See *Covina-Azusa Fire Fighters Union* v. *City of Azusa* (1978) 81 Cal.App.3d 48, 56 [146 Cal.Rptr. 155].) Only where the trial court contemplates further orders or action on the mandamus petition is the order denying the petition *not* appealable. (*Ibid.*)

IID's reliance on *Gosney* v. *State of California, supra,* 10 Cal.App.3d 921, is inapposite. In *Gosney,* the relief requested on all five causes of action was the same, although the first four causes of action were labeled "injunction" and the fifth cause of action "mandamus." (*Id.,* at p. 926.) The *Gosney* trial court issued the alternative writ of mandamus and the defendants answered. The court then discharged the alternative writ and denied the peremptory writ; the demurrer was sustained with leave to amend as to the first four causes of action. The appeal was taken from the trial court's findings of fact and conclusions. The appeal court dismissed the appeal, saying: "No appeal may be taken from findings and conclusions but only from the judgment that they support." (*Id.,* at p. 928.)

Here the trial court sustained the demurrer without leave to amend and without hearing any facts or considering any declarations on the matter. The trial court disposed of Elmore's first amended petition in toto and patently does not contemplate taking further action upon it.

In contrast to the *Gosney* rule is that set out in *California Teachers Assn.* v. *Board of Education* (1980) 109 Cal.App.3d 738 [167 Cal.Rptr. 429], where the complaint contained four causes of action arising from one set of operative facts. The first cause of action was for injunction, the second and third for writs of mandamus and the fourth a prayer for declaratory relief. A motion for preliminary injunction and peremptory writ was heard and denied by the trial court. The appellate court found the order denying the writ of mandamus was appealable; the order denying the writ of mandamus was properly before the appellate court even though the causes of action for a permanent injunction and declaratory relief were still before the trial court. *California Teachers* examined the cases which variously upheld or denied the appealability of orders denying petition for writs of mandamus and found this critical distinction: *appealability is determined by whether the trial court contemplated taking further action.* If it did, the order denying the petition for writ of mandamus would not be final. Conversely, if the trial court necessarily intended no further act on the petition, then the order denying the petition is "a final judgment" in the meaning of Code of Civil Procedure section 1064. (*Id.,* at p. 751.) *California Teachers* distinguishes *Gibson* v. *Savings & Loan Commissioner, supra,* 6 Cal.App.3d 269, also relied upon by IID: "[In *Gibson,*] . . . the order denying an alternative writ of mandate was held not to be a final order because the trial court specifically indicated that it was not dismissing the petition for writ of man-

date and was denying it without prejudice to applying for further relief." (109 Cal.App.3d at p. 751.)

The trial court here refused to issue the alternative writ or refer to the Board the factual issues raised in the first amended petition. Instead, the trial court sustained the IID's demurrer to Elmore's petition for writ of mandamus without leave to amend. Under the rule of *California Teachers,* the trial court's denial of the first amended petition was an appealable final judgment under Code of Civil Procedure section 1064.

## II

■ IID's second challenge to jurisdiction consists of the contention the Board had exclusive jurisdiction over the issues here. Water Code sections 2000 and 2001, and case law interpreting these sections, authorize a trial court, assuming jurisdiction over a water rights dispute, to refer to the Board factual issues particularly suited to the Board's expertise. (See *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 449-451 [189 Cal.Rptr. 346, 658 P.2d 709]; *Environmental Defense Fund, Inc.* v. *East Bay Mun. Utility Dist.* (1980) 26 Cal.3d 183, 200 [161 Cal.Rptr. 466, 605 P.2d 1]; *Allen* v. *California Water & Tel. Co.* (1946) 29 Cal.2d 466 [176 P.2d 8].) The trial court did not take this route. Instead, it denied the writ for failure to exhaust administrative remedies. This was error. The doctrine of exhaustion of administrative remedies is inapplicable in water cases. The doctrine "is a . . . requirement that the case must run the full gamut of administrative proceedings before an application for judicial relief may be considered." (2 Cooper, State Administrative Law (1965), The Requirement of Exhausting Administrative Remedies, at p. 572.) The exhaustion of administrative remedies is not a prerequisite to the filing of a mandamus petition in water cases, nor does failure to exhaust preclude the court from exercising its concurrent original jurisdiction. In *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419, 449, the Supreme Court recognized the Board's "broad," "open-ended," and "expansive" authority to undertake comprehensive planning and allocation of water resources and its power to adjudicate all competing claims, including riparian and prescriptive claims which do not fall within the appropriative licensing system. The Supreme Court raised and answered this precise question: "[Must plaintiffs] exhaust [this] administrative remedy before filing suit [in the superior court?]" The definitive answer was "no." (*Id.,* at p. 452.) "A long line of decisions indicates that remedies before the Water Board are not exclusive, but that the courts have concurrent original jurisdiction." (*Id.,* at p. 449.) The court then stated: "[T]he superior court has concurrent original jurisdiction in suits to determine water rights . . . ." (*Id.,* at

p. 451.) IID's challenge to jurisdiction on the ground of lack of jurisdiction because of failure to exhaust administrative remedies is without merit.

## III

The principal substantive question raised by this appeal is whether the allegations of the first amended petition sufficiently state a cause of action. ▮ It is a fundamental rule of law that mandamus will issue to compel performance of duties specifically imposed by law and to correct abuses of discretion. (Code Civ. Proc., § 1085; *Reinbold* v. *City of Santa Monica, supra,* 63 Cal.App.3d 433, 438.) The California Supreme Court has held a public irrigation district can be compelled by writ of mandamus to fulfill its statutory duties. (See *Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670, 677 [296 P. 1088].)

To state a cause of action for writ of mandamus the petition must plead facts showing (1) IID has a clear duty; (2) Elmore has a beneficial interest in IID's performance of that duty; (3) IID has the ability to perform the duty; (4) IID has failed to perform the duty or has abused its discretion in performing the duty; and (5) Elmore has no other plain, speedy or adequate remedy. (Code Civ. Proc., §§ 1085, 1086; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].)

### A.

▮ IID has a clear, mandatory duty to avoid wasting water, prevent flooding and provide drainage. Article X, section 2 of the California Constitution requires "the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented . . . ." This same language prohibiting the waste or unreasonable use or unreasonable method of use of the state's water resources is also found in section 100 of the Water Code.[2] "It is the policy of this state to foster the beneficial use of water and discourage [its] waste . . . ." (*City of Pasadena* v. *City of Alhambra* (1948) 33 Cal.2d 908, 926 [207 P.2d 17].)

It was stated in *People of the State of California* v. *United States* (9th Cir. 1956) 235 F.2d 647, 663: "[E]veryone must admit that the purpose of the constitutional amendment [now art. X, § 2] was to vest with a public interest the use of all the waters of the state, so that no part of the precious supply should flow uselessly into the sea or otherwise go to waste. This characterization applies to flood waters as well as to the normal flow."

---

[2]All statutory references are to the Water Code unless otherwise specified.

Elmore's amended petition alleges IID has permanently flooded agricultural land by allowing fresh water to needlessly drain into a saline sea; he alleges this practice constitutes waste and an unreasonable method of use forbidden by the Constitution and the Water Code. Elmore points to additional Water Code sections as mandating public irrigation districts not to cause flooding by their activities. Section 22160, for example, empowers the district to "maintain and operate such works and facilities within or without its boundaries as the board may deem necessary to protect the land in . . . the district, from damage by flood or overflow . . . ." Section 22225 gives the irrigation district authority "to perform all acts necessary to carry out fully" its statutory duties; section 22255 authorizes the Board to regulate the amount of water provided for irrigation whenever "seepage from the irrigation would damage adjacent land inside or outside . . . the district. . . ." Section 22875 authorizes the Board to "expend sums that seem necessary to its board for the protection . . . of land from damage by flood and the overflow of rivers." Section 22877 permits a district to "do all things necessary to insure its canal system and land from any damage by flood or overflow without holding an election to authorize the expenditure."

IID quickly points out sections 22160, 22875 and 22879 contain the operative word "may," not the mandatory words "shall" or "must" and relies on decisions declaring "shall" is mandatory and "may" is permissive (Evid. Code, § 11; Gov. Code, § 14) in contending it has no clear duty to avoid wasting water. "May," however, should be interpreted as "shall" and as invoking a mandatory duty *it such an interpretation is necessary to carry out legislative intent.* (See *People* ex rel. *City of Bellflower* v. *Bellflower County Water Dist.* (1966) 247 Cal.App.2d 344, 352 [55 Cal.Rptr. 584].)

It was stated in *Lara* v. *Board of Supervisors* (1976) 59 Cal.App.3d 399, 407 [130 Cal.Rptr. 668]: "Although 'may' may be construed to be mandatory where the object to be obtained compels such a construction, or where that construction is necessary to give effect to the legislative intent, in the absence of such special circumstances, it should be interpreted as permissive or conferring discretion." In *Kentfield* v. *The Reclamation Board* (1934) 137 Cal.App. 675, 683 [31 P.2d 431], the court stated: "'Frequently, however, the word "may" or the like as used in statutes relating to the duty of public officers is construed as mandatory, and not merely permissive, and of course *when such is the case mandamus may issue to compel the officer to perform the duty so imposed.*'" (Italics added.)

IID claims section 22095 is permissive in nature, the duty is not mandatory. With respect to the nature of the duty imposed on the IID to provide

for drainage, section 22095 declares IID "*may* provide for any and all drainage made necessary by the irrigation provided for by the district." (Italics added.)

Section 22098, in contrast, is mandatory in nature, stating: "Whenever it appears necessary to drain any land within a district on account of the irrigation which has been done or which is intended to be done by the district under laws relating to it, whether for the purpose of more beneficially carrying on the irrigation or to protect the district from liability by reason of the irrigation, its board, if it is reasonable from an economic standpoint that the drainage be provided, *shall provide for the drainage.*" (Italics added.)

In the case of *Sutro Heights Land Co.* v. *Merced Irr. Dist., supra,* 211 Cal. 670, 677, Sutro similarly contended the duty of an irrigation district to furnish drainage to lands within the district requiring it was expressly imposed on the district by statute, and therefore the duty could be enforced by writ of mandamus.

The Supreme Court agreed: "There can be no question that by this act of the legislature [section 2 of the Drainage Act of 1907, from which present Water Code section 22098 is derived], an irrigation district is given the power and authority to provide for drainage made necessary by the operation of the irrigation system installed and operated by the district. *It is equally clear that this act makes it the duty of the irrigation district to provide for such drainage. Being a duty enjoined by law, it can be enforced by a mandate of court.* Whether in a particular case a land owner in the district can invoke the aid of the court to compel the district to perform the duty imposed upon it by statute would depend upon the facts of that particular case. *There are two propositions at least which must be established before a court would be justified in issuing the mandate* requiring the district to perform the duty of providing drainage. *The first of these is that the land owner in the district must prove by satisfactory and sufficient evidence that his lands are in need of drainage made necessary by the irrigation operations of the district, and the second is whether the district is acting under the power conferred upon it by statute and is doing all within its powers to perform the duties enjoined upon it by the statute.*" (*Sutro Heights Land Co.* v. *Merced Irr. Dist., supra,* 211 Cal. 670, at p. 700, italics added.)

IID contends the just-quoted language of *Sutro Heights Land Co., supra,* and that of *Hume* v. *Fresno Irr. Dist.* (1937) 21 Cal.App.2d 348 [69 P.2d 483], which similarly held a district bound by statute to provide drainage whenever necessary or proper, or beneficial to lands affected by the district's irrigation practices, is inapposite. It argues these cases interpreted

section two of the Drainage Act of 1907 (1907 Act) which contains different language from that in the present section 22098.

The 1907 Act provided in pertinent part: "Whenever it appears necessary, or proper, or beneficial to the lands affected thereby, to drain such lands or any portion thereof on account of the irrigation which has been done . . . *it shall be the duty of the board of directors to provide for such drainage, and said board and its officers, agents and employes shall do all necessary and proper acts for the construction, repair, maintenance and management of drainage work for such purpose."* (Stats. 1907, ch. 298, § 2, p. 569.)

Does this change in statutory language diminish the duty of the irrigation district as declared in California Constitution article X, section 2, and Water Code section 100 into a mere permissive function? IID contends this issue has been resolved by *Lourence* v. *West Side Irrigation Dist.* (1965) 233 Cal.App.2d 532 [43 Cal.Rptr. 889]. *Lourence* does not support IID's position. The appeal court there approved a jury instruction which stated in order to show a violation of section 22098, the plaintiff must establish three propositions.

" 'First, he must prove that his lands are in need of drainage made necessary by the irrigation operation of the district.

" 'Second, he must affirmatively show that the installation of said drainage is reasonable from an economic standpoint.

" 'Third, he must prove that the steps taken by the district toward discharging this statutory duty do not constitute a reasonable compliance with the requirement of the statute.' " (233 Cal.App.2d at p. 535.)

*The Lourence case relied upon both Sutro Heights Land Co., supra, and Hume, supra, to authorize a damage recovery upon the conditions set forth in these instructions.*

Furthermore, a comparison of the old and the new statutory language does not support a conclusion the duty to provide drainage derived from the Constitution is no longer mandatory. The chief literal difference between the two statutes is the present statute limits the mandatory duty of the irrigation district to actions which are *"economically reasonable."* The IID argues this difference is crucial and makes the present statute discretionary. The legislative purpose in adding the "economically reasonable" language, however, was to incorporate into the statute the Supreme Court reasoning found in *Sutro, supra. Sutro* declared an irrigation district cannot be required to do more than "all [that is] within its power." (*Sutro Heights Land*

*Co., supra,* 211 Cal. 670, 700.) Thus, the present statute has expressly incorporated the standards which *Sutro* found implicit in the predecessor statute.

■ It is not necessary the legal duty be absolute and unqualified in every respect or even explicit in order to warrant the issuance of a writ of mandamus. (*A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 342 [142 Cal.Rptr. 111]; *Reinbold* v. *City of Santa Monica, supra,* 63 Cal.App.3d 433, 445.) ■ Our review of the Constitution and statutes compels the conclusion the present statutory provisions regarding IID duties to provide drainage are mandatory. *Under any rational view of the constitutional directives and the statutory scheme, it is the duty of the irrigation district to provide for any drainage made necessary by operation of its irrigation system.*

## B.

■ In his amended petition, Elmore alleges he has property interests in thousands of acres of agricultural land adjacent to the Salton Sea. He alleges substantial portions of his farmland have been flooded with salt water and the remainder is threatened by IID's water management practices which have caused significant volumes of fresh water to needlessly flow into the saline sea. Elmore has thus pled facts sufficient to show his beneficial interest in IID's performance of its duty to avoid wasting water, prevent flooding resulting from its irrigation practices and provide drainage made necessary by its activities.

## C.

■ Further, the amended petition alleges, as is required to state a cause of action for writ of mandamus, IID is capable of regulating water drainage into the Salton Sea and of providing drainage of lands adjacent to the sea made necessary by its irrigation practices. The petition also alleges various methods within IID's expertise and economic ability which IID could employ to eliminate water waste and reverse the flooding and loss of drainage of Imperial County farmers' lands. The allegations sufficiently state IID has the present ability to discharge the mandatory duty at issue.

## D.

The amended petition also contains the requisite allegation IID has failed to perform the statutory duty at issue. Elmore alleges IID's irrigation practices allow significant quantities of fresh water to flow directly into Salton Sea, thereby preventing its beneficial use for agricultural or domestic pur-

poses. Elmore also pleads facts showing as a direct result of IID's activities, many thousands of acres of prime agricultural land adjacent to the Salton Sea are flooded. Finally, Elmore alleges gravity drainage of his land has been impaired because the level of the sea has continued to rise as more fresh water flows into the sea. IID has failed to provide the necessary drainage. The petition sufficiently states IID has failed to perform its mandated duty to avoid water waste, prevent flooding resulting from its irrigation practices and provide drainage made necessary by its activities.

### E.

Finally, Elmore pleads sufficient facts to withstand demurrer on the ground he has no plain, speedy or adequate remedy other than the mandamus he seeks by way of the petition. The amended complaint avers Elmore applied to the DWR to investigate IID's wasteful water management practices and to the Board for a hearing on the issue in June 1980. At the time of the trial court's ruling on IID's demurrer to Elmore's petition for writ of mandamus, three years had elapsed from Elmore's initial request for administrative relief, during which the DWR had only issued a report documenting IID's water waste and failure to prevent floods or provide drainage, and the Board had failed to conduct a hearing. While this appeal was in process, the Board convened a hearing (Sept. 27, 1983) and issued a decision formally adopted by the Board (June 21, 1984), concluding the failure to implement additional water measures is unreasonable and constitutes a misuse of water under the California Constitution and the California Water Code. *At the time the trial court sustained IID's demurrer,* however, three years of administrative procedures had proven ineffective. Elmore's amended petition states facts sufficient to show pending administrative proceedings did not afford him a plain, speedy or adequate remedy.

Nor would Elmore's suit for damages and injunctive relief afford him a plain, speedy or adequate remedy. An award of money damages would not recover Elmore's flooded farm land; and the availability of injunctive relief against a public body, such as IID, a United States Bureau of Reclamation Project, does not defeat an action in mandate on the ground injunctive relief is an adequate alternative remedy. (See *California Teachers Assn.* v. *Nielsen* (1978) 87 Cal.App.3d 25, 29 [149 Cal.Rptr. 728].) The amended petition sufficiently states Elmore has no plain, speedy, or adequate remedy other than the mandamus he seeks here.

The first amended petition clearly alleges sufficient facts to state a cause of action for writ of mandamus directing IID to comply with constitutional and statutory directives to conserve water, prevent flooding resulting from its irrigation practices and provide drainage made necessary by its activities.

The trial court improperly sustained the demurrer to the petition without leave to amend.

## DISPOSITION

Judgment reversed and cause remanded. In light of the Board's recent issuance of the above-discussed decision concluding the IID in fact misuses water (*ante,* at p. 198), the trial court may and should on remand, and upon trial, consider the Board's decision on its finalization and make use of the water agency's expertise in determining Elmore's petition for writ of mandamus. (*National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419, 451; § 2000.)

Wiener, J., and Work, J., concurred.

A petition for a rehearing was denied September 4, 1984, and respondent's petition for a hearing by the Supreme Court was denied November 1, 1984.