[No. A112880. First Dist., Div. Four. Jan. 16, 2007.]

NICHOLAS BETTENCOURT et al., Plaintiffs and Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

1092

## COUNSEL

Maitreya Badami for Plaintiff and Appellant Nicholas Bettencourt.

James P. Collins for Plaintiff and Appellant Sherman Lee.

Freya Horne for Plaintiff and Appellant Walter Cuddy.

Furst & Pendergast and Peter A. Furst for Plaintiff and Appellant Marcial Marquez.

Mark Nicco for Plaintiff and Appellant Adam Choy.

Dennis J. Herrera, City Attorney, Danny Y. Chou, Molly S. Stump, Chief Attorneys, and David A. Carrillo, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**REARDON, Acting P. J.**—The trial court denied a petition for writ of mandate and for injunctive relief filed by appellant Nicholas Bettencourt and four other members of respondent San Francisco Police Department (department) who sought dismissal of disciplinary proceedings before respondent San Francisco Police Commission (commission). The officers appeal the order denying mandamus and injunctive relief,[1] contending that the charges against them must be dismissed inter alia because (1) the applicable statute of limitations bars these proceedings despite the then pending civil litigation in

---

[1] See part II., *post.*

which each of the officers was a named defendant; and (2) the department failed to conduct a timely review of the charges in accordance with its own internal regulations. (See Gov. Code,[2] § 3304, subd. (d)(6) (hereafter section 3304(d)).) In February 2006, we denied the officers' petition for a stay of the disciplinary proceedings until the appeal was resolved. The disciplinary proceedings were set for hearing on October 10, 2006. In September 2006, we granted a renewed petition for a stay. We now affirm the trial court order and lift the stay.

## I. FACTS

### A. *Incident*[3]

On January 21, 2002, four San Francisco police officers—appellants Nicholas Bettencourt, Adam Choy, Walter Cuddy and Marcial Marquez—responded to a report that guns were being removed from a vehicle on Kirkwood Avenue. They found four African-American juveniles in a car listening to a radio. The officers ordered the minors—two boys and two girls aged 12 to 15 years old—from the car at gunpoint. The minors were detained, handcuffed and searched.

A crowd gathered. The mothers of the detained girls sought an explanation from police. Bettencourt—who was Caucasian—was reported to have told one of the mothers that "If you people would not act like this, this would not be happening." Appellant Sherman Lee—the ranking officer—ordered that a warrant check be run on the juveniles before they were released. No guns were found that night.

Two bystanders—one adult and one juvenile—were arrested by police. The juvenile sustained injury during the arrest. He was taken to the local police station, detained and questioned by Cuddy. Police obtained a statement from the juvenile without first advising him of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) or advising his father—who had appeared at the station—that he was being questioned.

### B. *Investigation and Charges*

The following day, the City of San Francisco Office of Citizen Complaints (OCC)[4] received a series of complaints about the officers' handling of the

---

[2] All statutory references are to the Government Code unless otherwise indicated.

[3] These facts are taken from the allegations set forth in the disciplinary charges against five officers.

[4] The San Francisco City Charter imposes on the OCC the duty to investigate complaints of police misconduct and to recommend disciplinary action to the chief of police. (See S.F. Charter, art. IV, § 4.127.)

incident. It began an investigation. On December 10, 2002, a civil lawsuit was filed relating to the January 2002 incident. All five officers were named as defendants in that action. (*King-Brown v. City and County of San Francisco* (Super. Ct. S.F. City and County, No. 415557); see fn. 9, *post.*)

The OCC completed its investigation on December 31, 2002. On January 8, 2003, it forwarded the matter to the department with a recommendation that charges be filed with the commission.[5] The OCC also notified the five officers of its preliminary findings that same day.[6]

The department received the OCC's final report on January 22, 2003.[7] The department did not take action on the matter within the required 60-day period. On April 8, 2003, the OCC notified Acting Chief of Police Alex Fagan that the time for department review of the recommendations had passed. On April 9, 2003, Acting Chief Fagan admitted that the matter had fallen "through the cracks."

Between April 23 and April 28, 2003, each of the five officers was served with notice of disciplinary charges.[8] Lee was charged with unauthorized action by ordering the prolonged detention of juveniles for an unauthorized warrant check. (See S.F. Police Dept. Gen. Order Nos. 5.03, 6.18, 10.08.) He was also charged with five counts of neglect of duty by abandoning investigation of a reported crime, failing to comply with juvenile procedures, failing to provide prompt and appropriate medical treatment, failing to receive a citizen complaint, and failing to complete an immediate investigation of officer conduct. Cuddy was charged with one count of neglect of duty for

---

[5] When the OCC has completed an investigation and has found that the alleged misconduct was established by a preponderance of evidence, it must transmit its investigation and findings to the chief of police for review. (See S.F. Police Dept. Gen. Order No. 2.04.)

[6] The OCC must provide notice of this action to the officers under investigation. (See S.F. Police Dept. Gen. Order No. 2.04.)

[7] On January 17, 2003, a second civil lawsuit was filed relating to the January 2002 incident. All five officers were named as defendants in that action. (*Hoskins v. City and County of San Francisco* (Super. Ct. S.F. City and County, 2005, No. CGC03416515).) On July 3, 2003, this second action was removed to federal court. *Hoskins v. City and County of San Francisco* (N.D.Cal.) No. C-03-3121 SBA.) On December 22, 2003, Bettencourt and Marquez were dismissed as defendants in the second court action. On June 10, 2004, Choy, Cuddy and Lee were dismissed as defendants in the second civil action. The entire action was dismissed with prejudice in January 2005. As we find that the statute of limitations was properly tolled because of the first civil action, we need not consider the effect that this second action had on the statute of limitations for filing disciplinary charges.

[8] San Francisco police officers are not subject to disciplinary action for misconduct except after a hearing before the commission initiated by the filing of a verified complaint setting forth the acts forming the basis of alleged misconduct. (See S.F. Charter, appen. A, § A8.343.)

failing to comply with juvenile procedures. Bettencourt was charged with neglect of duty resulting from failure to explain the reasons for police action. He was also charged with using a racial slur to make a derogatory comment. Marquez and Choy were charged with unauthorized action stemming from their searches of female juveniles. (See S.F. Police Dept. Gen. Order Nos. 1.04, 2.01 (rules 1, 9, 14), 2.04, 5.01, 7.01.)

## C. *Administrative and Trial Court Proceedings*

Meanwhile, on January 7, 2004, Bettencourt and the other four officers filed a motion to dismiss all charges with the commission, arguing that the charges were filed after the one-year statute of limitations had expired. (See § 3304(d).) The city opposed the motion, reasoning inter alia that the limitations period was tolled during the then pending civil litigation.[9] (See § 3304(d)(6).)

The commission conducted a hearing on the motion to dismiss in March 2004. It denied the motion to dismiss in April 2004. It found that the limitations period was tolled from December 10, 2002—the date on which the civil action was filed. It rejected the officers' contention that the tolling provision did not apply because the civil action did not actually impede the disciplinary matter. (See § 3304(d)(6).) The commission also concluded that the department's failure to complete review of the OCC report within 60 days did not warrant dismissal as a sanction for noncompliance.[10]

On July 6, 2004, Bettencourt and the other four officers[11] filed a verified petition for a writ of mandate, seeking injunctive and declaratory relief. They named respondents city, department and commission as defendants.[12] In October 2004, the city, the department and the commission answered the petition. In May 2005, the trial court stayed the disciplinary proceedings until resolution of the issues in the petition and the expiration of an appeal period.

In July 2005, Bettencourt sought a hearing on the issues raised in the petition. A hearing was held on the petition for writ of mandate in October 2005. On November 18, 2005, the trial court filed its order denying the petition for writ of mandate and the request for injunctive relief. It found that

---

[9] On April 12, 2005, all five officers were dismissed as defendants in this civil action.

[10] The commission also found that the multiple-officer and multijurisdictional exceptions allowed for a reasonable extension of the one-year period to render the filing of disciplinary charges timely. (See § 3304(d)(3), (4).)

[11] For convenience, the opinion refers to all four appellants as "Bettencourt."

[12] For convenience, the opinion refers to all three respondents as "the city."

the commission's findings on tolling of the limitation period during the period of civil litigation were not arbitrary, and were neither clearly erroneous nor contrary to the weight of the evidence.[13] (See § 3304(d)(6).) On November 23, 2005, notice of entry of the order denying the writ petition was given.

## II. APPEALABILITY OF ORDER

Bettencourt and the other officers filed a timely notice of appeal from the order denying issuance of a writ of mandate. They assert in their notice of appeal that an order denying a writ of mandate is an appealable order, but they do not explain in their opening brief why this is so. (See Cal. Rules of Court, rule 8.204(a)(2)(B).) At one time, it was thought to be settled law that an order denying a writ of mandate was an appealable order unless the trial court contemplated further orders or action on the petition. (*Elmore v. Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190–191 [205 Cal.Rptr. 433]; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 97, 106, pp. 159–160 [final judgment in special proceeding is appealable], 169–170 [order denying writ of mandate is appealable as judgment in special proceeding].) However, recent California Supreme Court cases have disapproved this line of authority. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697–699 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*); *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 736–744 [29 Cal.Rptr.2d 804, 872 P.2d 143]; see *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52, fn. 5 [51 Cal.Rptr.2d 837, 913 P.2d 1046]; *Nerhan v. Stinson Beach County Water Dist.* (1994) 27 Cal.App.4th 536, 538–540 [33 Cal.Rptr.2d 10].) In the matter before us, the trial court order denied the petition for writ of mandate and the request for injunctive relief. It did not purport to rule on the other two causes of action—administrative mandate and declaratory relief—that were also pled in the petition.

■ Nonetheless, we are satisfied that the order before us constitutes a final judgment for the purposes of this appeal. A judgment is a final determination of the rights of the parties. When we determine whether an adjudication is final and appealable, the substance and effect of the adjudication—not the form of the decree—is determinative. When no issue is left for further consideration, the decree is final. (*Griset, supra,* 25 Cal.4th at p. 698.) In *Griset,* a unanimous California Supreme Court held that the appeal was taken from a judgment disposing of all causes of action even though there

---

[13] The trial court also found that the commission properly concluded that the one-year period was reasonably extended because multiple officers were involved in the investigation. (See § 3304(d)(4).) It made no holding on the reasonable extension based on the multijurisdictional exception that the commission also found applicable. (See § 3304(d)(3).)

was no formal entry of judgment when the trial court completely resolved an allegation that was essential to each alleged causes of action. (*Id.* at pp. 698–699.)

This is precisely the situation in the case before us—Bettencourt and the other officers appealed from an order effectively disposing of all four causes of action pled in the petition notwithstanding the lack of a formal judgment so stating. They asserted as much when they filed their appeal. (See Cal. Rules of Court, rule 8.100(f).) The trial court resolved the statute of limitations issue essential to all four alleged causes of action such that the officers cannot prevail on any of them. In these circumstances, we treat the trial court's order denying issuance of a writ of mandate as the equivalent of a final judgment on all of these causes of action. (See *Griset, supra,* 25 Cal.4th at pp. 698–699.) As the appeal from this order was timely filed,[14] we have jurisdiction to consider the merits of the issues that Bettencourt raises.

## III. STATUTE OF LIMITATIONS

### A. *Statutory Construction*

 Bettencourt contends that the applicable statute of limitations bars the disciplinary proceedings. By law, no punitive action may be undertaken against a police officer for any alleged misconduct if the investigation of the allegation is not completed within one year of the agency's discovery of that misconduct. If the agency determines that disciplinary charges should be filed, it must complete its investigation and notify the public safety officer of its proposed disciplinary action within that year. (See § 3304(d).)

Section 3304 is part of the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.). (*Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 24 [22 Cal.Rptr.3d 615] (*Sulier*).) The act is primarily a labor relations statute cataloging the basic rights and protections that must be afforded to all peace officers by the public entities that employ them. One such protection— codified in section 3304—is the speedy adjudication of conduct that could result in discipline. (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 988 [50 Cal.Rptr.3d 822]; *Sulier, supra,* 125 Cal.App.4th at p. 26; *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 63 [15

---

[14] The January 17, 2006 notice of appeal from the order entered on November 23, 2005, was timely. This notice of appeal purports to appeal from the order denying the petition for a writ of mandate. A January 25, 2006 amended notice of appeal specifies that the appeal is taken from the November 18, 2005 order denying the petition for writ of mandate. The January 17, 2006 notice of appeal was sufficient to appeal from the November 18, 2005 order when notice of entry was given on November 23, 2005. (See Cal. Rules of Court, rule 8.100(a)(2).)

Cal.Rptr.3d 383]; *Runyan v. Ellis* (1995) 40 Cal.App.4th 961, 964 [47 Cal.Rptr.2d 356].) The one-year statute of limitations set out in section 3304(d) seeks to balance competing interests—the public interest in maintaining the integrity and efficiency of the police force and the individual officer's interest in receiving fair treatment. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 908–909 [4 Cal.Rptr.3d 325]; see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

The statute allows for tolling or extension of the one-year limitations period under specified circumstances. One of those provisions requires the tolling of the statute of limitations during the pendency of a civil action if "the investigation involves a matter in civil litigation where the public safety officer is named as a party defendant." (§ 3304(d)(6).) The commission found that the one-year statute of limitations was tolled during the pendency of the civil action. The trial court endorsed this legal ruling.[15] We conclude—after making an independent determination of the meaning of the civil action lawsuit tolling provision—that this provision applies to the matter before us to render the disciplinary charges timely.

In this matter, the underlying incident occurred on January 21, 2002. All five officers were named in the civil action filed on December 10, 2002, as a result of the incident. The one-year limitations period had not expired by that date, when it was tolled. Bettencourt and the other four officers were not dismissed from the civil action until April 12, 2005—at which time the one-year limitations period began to run again. However, by that time, the April 2003 disciplinary charges had already been filed against the five officers. Thus, applying the civil action tolling provision set out in section 3304(d)(6), it would appear that the disciplinary charges were timely filed before the expiration of the one-year limitations period.

Bettencourt argues that this tolling provision cannot logically apply to the matter before us because the civil action had no actual bearing on the OCC investigation of the January 21, 2002 incident.[16] He contends that this reading of the statute produces an absurd result, reasoning that there must be a nexus between the civil action and the OCC investigation.

---

[15] The trial court also rejected Bettencourt's additional claim that the tolling specified in section 3304(d)(6) did not begin to run until the officers were served with a summons in that action. Instead, it found that the tolling began when the action was filed. Bettencourt does not challenge this ruling on appeal.

[16] Bettencourt asserts that the OCC did not learn of this civil action until January 2004, after it had filed its charges against the five officers.

The issue before us turns on the meaning of the language of section 3304. To the extent that an issue on appeal requires the interpretation of statute, it raises pure questions of law that we determine de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349–1350 [49 Cal.Rptr.2d 238]; see *Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33].) We are not bound by the trial court's interpretation of this provision but make an independent review of this question. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *Runyan v. Ellis, supra*, 40 Cal.App.4th at p. 964; *Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903], cert. den. (1994) 510 U.S. 1194 [127 L.Ed.2d 653, 114 S.Ct. 1301].)

■ When construing the meaning of the language of section 3304, we apply basic principles that apply in all statutory construction cases. We seek to ascertain the Legislature's intent so that we may effectuate the law's purpose. Our goal is to interpret the language of the statute—not to insert what has been omitted or omit what has been inserted. We look first to the language of the statute itself, read as a whole, seeking to harmonize parts of a statutory scheme. If the words contained in the statute are reasonably free from ambiguity and uncertainty, we look no further than those words to ascertain the provision's meaning. (*Sulier, supra*, 125 Cal.App.4th at p. 26; see *Burden v. Snowden, supra*, 2 Cal.4th at p. 562.) Only if the words are ambiguous or unclear may we turn to extrinsic aids to assist us in determining the Legislature's intent. (*Burden v. Snowden, supra*, at p. 562.)

■ The pertinent language of section 3304 is not ambiguous or unclear. It provides that the one-year statute of limitations must be tolled if the investigation *involves a matter in civil litigation* in which the public safety officer is named as a party defendant. (§ 3304(d)(6).) This is the nexus that the Legislature has specified—that the investigation and the civil action involve the same incident. The elements set out in the statute were satisfied— the civil action involved the January 21, 2002 incident that was the subject of the investigation and it was filed against all five officers in this matter. The statutory language does not require that the investigation actually be impeded by the civil action, nor does it require that the OCC is aware of the action. It merely requires that a civil action be filed against the officer involving the same underlying incident as the investigation. (*Ibid.*)

■ An action is commenced for statute of limitations purposes when a complaint is filed. (Code Civ. Proc., § 350; see 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 662, pp. 845–846.) By law, the time for tolling the statute of limitations begins at the filing of a civil action. We do not have the

power to graft onto the language of section 3304 the additional requirement that Bettencourt seeks. (See *Sulier, supra*, 125 Cal.App.4th at p. 26.)

## B. *Due Process*

■ Bettencourt also contends that this application of the tolling provision without some nexus between the investigation and the civil action works a manifest injustice in violation of his due process rights. We reject this claim, for several reasons. First, it does not appear that Bettencourt raised his due process issue in the trial court. Typically, constitutional issues not raised in earlier civil proceedings are waived on appeal. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; see *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664]; *Thomas v. Duggins Construction Co., Inc.* (2006) 139 Cal.App.4th 1105, 1114 [44 Cal.Rptr.3d 66].) This rule has been specifically applied to bar consideration of issues involving constitutional challenges to statutes of limitations. (See, e.g., *Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 930–931 [40 Cal.Rptr.3d 703] (*Kuperman*).) Thus, it appears that Bettencourt has not preserved this issue for our resolution on appeal.

■ Even if he had done so, Bettencourt does not offer a legal argument with any citation of authorities in support of his due process claim. Instead, he simply asserts that application of the statute to this matter violates due process. This is not a sufficient showing to prove that error occurred—a burden that lies with Bettencourt as the appellant. (See *Kuperman, supra*, 137 Cal.App.4th at p. 931.) When an appellant does not offer any legal authority to meet this burden, we may deem the issue to be without foundation and thus waived. (*Ibid.*; see *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481], cert. den. *sub nom. Stanley v. California* (1996) 517 U.S. 1208 [134 L.Ed.2d 930, 116 S.Ct. 1825].) Bettencourt has not satisfied the burden of proving that this constitutional error occurred.

■ Third, even if we were to reach the merits of this constitutional claim, Bettencourt would not prevail. Long-established law recognizes that statutes of limitations are within the jurisdictional authority of the state Legislature. (*Scheas v. Robertson* (1951) 38 Cal.2d 119, 125 [238 P.2d 982]; *Kuperman, supra*, 137 Cal.App.4th at p. 931.) Even a constitutional right is subject to reasonable statutory limitation about the time within which to enforce it, if the Constitution does not provide otherwise. The Legislature's power to provide reasonable limitations periods is unquestioned. (*Kuperman, supra*, 137 Cal.App.4th at p. 931.) If the enactments fall within this legislative prerogative, they are not constitutionally objectionable and the courts may not nullify them. (See *Scheas v. Robertson, supra*, 38 Cal.2d at p. 126; *Kuperman, supra*,

137 Cal.App.4th at p. 931.) The need to avoid multiple actions with the attendant danger of conflicting decisions on the same issues is the policy underlying the tolling provision set out in section 3304(d)(6). Assuming arguendo that we reached the merits of this issue, we would find no constitutional flaw in the application of this tolling provision during the pendency of a civil action involving the same incident as the disciplinary proceedings. As the city met all the requirements of section 3304(d)(6), we find that this provision required the tolling of the one-year limitations period for the duration of the civil action.[17]

## IV. VIOLATION OF GENERAL ORDER

■ Bettencourt also argues that the city's failure to comply with its department's regulations requires dismissal of the disciplinary proceedings. The department's regulation provides that the chief of police has 60 days from receipt of the OCC investigation and findings in which to conduct a review and recommend disciplinary action. If this is not possible, the chief of police must request an extension of time from the commission, setting forth reasons for the request. (S.F. Police Dept. Gen. Order No. 2.04.) The meaning of this provision presents a question of law for our determination on appeal. (See *People ex rel. Lockyer v. Shamrock Foods Co., supra,* 24 Cal.4th at p. 432; *Riveros v. City of Los Angeles, supra,* 41 Cal.App.4th at pp. 1349–1350.)

This regulation does not specify any sanction if the chief of police fails to act within 60 days or fails to seek an extension of time within that time. Bettencourt cites no authority requiring the dismissal of disciplinary charges as a sanction for the failure to act within the 60-day period specified in the department's general order. The regulation sets a time limit that is usually deemed to be directory in the absence of a contrary intent. The violation of directory time limits do not usually require the invalidation of the government action to which the time limits apply. (See *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79]; *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) As the chief of police violated a directory regulation, no penalty attaches to the department's failure to act within the 60 days specified in it. We find that the regulation does not form an independent ground for invalidation of the disciplinary charges filed within the one-year limitations period.

---

[17] In light of this ruling, we need not determine whether the multiple-officer or multijurisdictional extensions apply, nor do we need to consider the impact of a second filed civil action.

## V. REMITTITUR

The order denying mandamus and injunctive relief is affirmed. The September 2006 stay previously imposed shall remain in effect until the remittitur issues.

Sepulveda, J., and Rivera, J., concurred.